Courtroom, Deputy. Okay, Mr. Givens. May it please the Court. My name is Johnny Givens, and I'm here with my co-counsel, Patrick Maloof, on behalf of Ms. Dorothy Barnett. This is a case about contract interpretation. One beacon has admitted in its pleadings and in other cases that it issued ten separate policies of insurance to Mississippi Valley Silica Company, yet it can only produce a single beacon. We believe this case is black-letter law about the interpretation of the one found policy and the nine lost policies, and because the District Court failed to follow the standards set forth under Rule 56, and it viewed the facts of this case in the light most favorable to one beacon, we asked this Court to reverse the District Court's decision to find no coverage. There are a few facts that are important to this case that I want to bring out, and first of all, during this argument, for simplicity's sake, I'm going to refer to the insurance companies as a whole as one beacon, if that's okay with Your Honors, as opposed to Columbia Casualty and so forth. But starting in 1958, they've admitted that they've issued comprehensive general liability policies to Mississippi Valley Silica and continued in through the end of 1967 for a total of ten separate policies. Mr. Barnett was exposed to Mississippi Valley Silica's product from 1960 to 1970, thereby if this Court was to find coverage in this case, the vast majority of the policies would go to satisfy the underlying judgment. We know that the policies are lost because on November 17th of 1981, one beacon entered into a joint stipulation of facts omitting as much, and that's referenced in this Court's statement in Scarborough at page 137. And since that stipulation was entered into, though, they found the single policy that's in the record in this case and is before you that was in effect from April of 1962 to April of 1963. They made another omission in this case on record page 234, footnote 7, that they issued the policies and all but one are lost. Therefore, this Court, under a de novo standard review, should apply the principles of contract interpretation under Louisiana law to the nine lost policies and the one found policy. Turning to the produced policy, in my briefing to the Court, Your Honors, I cited to record sites 170 to 184. In preparation for our argument, I realized that the same policy, which is at record sites 93 to 107, is the exact same policy, but it was actually reproduced on the legal size format, so the wording is easier to read and so forth. So that's what I'm going to reference throughout this argument. It's also part of the record. Starting with item 3 on record page 93, it states that the insurance afforded is only with respect to such and so many of the following coverages as are indicated by the specific premium charge or charges and the limit of the company's liability against each such coverage. Briefly in this policy, we have four coverages. We have coverage A, B, C, and D. A and C are not applicable to this case because it's for automobile liability. Coverage D is also not applicable because it is for property damage liability except for automobile. That leaves us with coverage B. Both parties agree that if there is coverage in this case, the claims would fall under coverage B, bodily injury, liability except automobile. And underneath that coverage, the coverage that is at issue is for aggregate products. And this declaration page of the policy clearly states that there is $200,000 in liability coverages for aggregate products. OneBeacon makes no argument that aggregate products is not the coverage at issue in this case. Their only argument to this court is that Mississippi Valley failed to pay for that coverage. But it's black letter law that any ambiguities that are in this contract must be construed in favor of Mississippi Valley Silica to affect, not deny coverage. That's the Smith v. Reliance case, the Dorr v. Mobile Oil Corporation case, Yount v. Monsanto, and more importantly, Louisiana Civil Code Article 2049, which states provisions susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. It is our position that at a minimum, there is an ambiguity between the declaration page found on page 93 of the record and the record page 100, where it lists Neil C. Endorsement for under the products included completed operations. And that's highlighted for your honors there. Now I'm going to make three main points that demonstrate the declaration of this policy that is controlling is record page 93, not 100. Point number one, if your honors will turn to record page 94, which is the second page, it states that the company, and that's the first kind of centered piece at the top there, says herein called the company, agrees with the insured named in the declarations made apart hereof. What is significant about this statement is it says the named insured in the declarations. If your honors review this policy on record pages 99 and 100, the other declaration pages, the name insured, Mississippi Valley Silica Company, appears nowhere on those pages. The only page that the name insured appears on is the first page of the policy right there where it says name insured, Mississippi Valley Silica Company, Inc. Point number, so a reasonable interpretation of this policy is that the declarations that are in effect for the coverage of this policy are what are stated on page 93. That's controlling. Point number two in that regard, if your honors will turn with me to record page 95. These are the conditions of the policy, and under six limits of liability products, coverages B and D, which is exactly what we're under here today, and within that paragraph it clearly states the liability stated in the declarations as quote, aggregate products, end quote. Now, what's significant there is if your honors look at record page 100, which is what one beacon solely relies on to say that there's no coverage in this case, the term aggregate products appears nowhere on the consolidated liability schedules. There's nowhere on that page that says aggregate products. Therefore, paragraph six can only be referring to record page 93 where it does say aggregate products and it lists a limit of liability of $200,000. Point number three on this regards is right below there is limits of liability for coverage D. Now, while we don't have liability under coverage D, it goes to show what declarations control in this policy. There are three separate coverages discussed under paragraph seven. Aggregate operations, aggregate protective, and aggregate contractual, and before each of those statements it says as stated in the declarations, and again, those terms only appear in the policy on page 93 in the declarations, and what's significant about that, your honors, if you look under coverage D for the aggregate protective and aggregate products, the policy clearly states nil, which means zero. There is no liability there, and if we had had a claim under coverage D, I wouldn't have an argument here before your honors, but we're not under that. We're not under a nil. We're under $200,000. The bottom line is that one beacon was imprecise in drafting this policy, where they should have placed a nil next to aggregate products if that's, if it didn't have the coverage, they failed to do that, and instead they listed a limit of liability, and at a maximum it provides $200,000 in coverage, and this is not the only instance in this policy where one beacon was imprecise in drafting it. If your honors will look at me at record page 99, you will clearly see that under advanced premiums there's coverage A and coverage B, and down at the bottom it lists advanced premiums of $691.58 and $349.06. Going back to the first page of the policy, the $349.06 was not for coverage B. That's not automobile. It was for coverage C. This is just another example of where the drafter of the contract was imprecise and was not clear in what they meant, and under Article 2056 of the Louisiana Civil Code, in case of doubt that cannot be otherwise resolved, provisions in a contract must be interpreted against one beacon who furnishes text. There's no dispute in this case that one beacon furnished the text of this policy. They are the ones that furnished the text that says $200,000 of coverage for aggregate products, which is what our claim falls under. The policy pursuant to all Louisiana law, specifically Smith v. Reliance, must unambiguously exclude coverage. They cannot get here in this case because there is a limit of liability. Turning to the loss policies, Your Honor, we do not believe that the Louisiana State Court nor the District Court even addressed the loss policies. The Louisiana law is actually clear on what I have to prove when there's an issue of loss policies, and that's laid out in the Horner v. Anko insulation case that I cited in my brief, Your Honor, and that's a Court of Appeal of Louisiana case for the Fourth Circuit. And I'll lay out in a minute why that's still applicable here, even though it's not the Supreme Court. They laid out three requirements to prove that the policy has been lost. Those three requirements are clearly met in this case through one beacon's omission. They admit their loss. I had nothing to do with it. My client had nothing to do with it. And once those three requirements are met, we've established a foundation for the omission of parole evidence to prove the contents and existence of an insurance policy and coverage. And this is where the disconnect comes between our position and one beacon's position. They say it's my duty to prove the claims fall within the coverage. It's my position, it's their duty to disprove coverage. And I base that on the Horner case. And the reason I base that on the Horner case is because in that case, the insurance company, Maryland Casualty, argued that the certificates of insurance were not sufficient to prove coverage, quote, because they do not specify the terms, conditions, and limitations of the alleged coverage. Maryland Casualty, in that case, argued that the actual policies were needed. Well, that argument was rejected by the Court of Appeals. The Court there found that the certificate of insurance, which only proved that the policies existed and were issued, was sufficient and found at that point in the process the burden shifted to the insurance company, Maryland Casualty, to disprove coverage or to prove applicable exclusions, exceptions, or exemptions to coverage. Now, that case went up on writ to the Louisiana Supreme Court, and that writ was denied, and that can be found at 819 Southern Sector 1023. And as this Court noted in a Scarborough decision at page 136, the Court of Appeals decisions are controlling, absent a strong indication from the Supreme Court of Louisiana, they would have decided the issue differently. And further, when a writ is denied, it may be said the Supreme Court affirms or at least approves of the decision, and that's at page 137 of y'all's decision. And therefore, since the Supreme Court of Louisiana refused the writ as to insurance coverage issue, it can be said the Court approved the Court of Appeals decision in the Horner case. Now, one beacon has submitted no evidence that disproves coverage for the nine lost policies. The only evidence they've submitted here, Your Honor, is two affidavits from a Mr. Fitzgerald and a Mr. Simmons. They produced no policy premium payments. They produced no correspondence. They produced nothing but sample policies in the one policy. There is no other evidence as to the nine lost policies as to what coverage was purchased or what wasn't purchased. What we do have and what they readily rely upon, which is incorrect, is Mr. Fitzgerald in his affidavit states, without any support, quote, Mississippi Valley has agreed during litigation that it did not purchase products and completed operation coverage from one First of all, that's not based on personal knowledge and information. So that's an improper affidavit testimony. He's making a legal conclusion. And if the Court actually looks at the joint stipulation of facts that was entered into in the Scarborough case, which is at record page 345, paragraph 4, the only thing it said was the policies of insurance issued by insurers to NVSC contained a products exclusion. There's a big difference between admitting that you never purchased coverage and that you purchased coverage that had an exclusion within it. All policies have an exclusion. But we now know that that exclusion they agreed existed doesn't exist because they produced this policy and the exclusion is not in it. It's absent. Before your time runs out, one beacon agrees that there's no collateral estoppel from the action it filed in Louisiana and took the default judgment. Yes, Your Honor. So if our panel rules that, on the points both sides agree upon, that collateral estoppel doesn't bar it, in your opening brief you urged this matter be remanded for trial. Now you're asking that we render judgment in your favor. How can we do that on this summary judgment record? At this point, Your Honor, in that regard, I think at a minimum this Court has to reverse or not has to, but I would submit based on the agreement that both parties say the collateral estoppel doesn't apply and there's no case law that I've found that supports that position, we'd have to at least reverse the district court on that finding. But I believe under a de novo standard of review, the Court can interpret these policies and the evidence that's been submitted and render the judgment on the coverage issue separately. Did I answer that question sufficiently, Your Honor? Thank you, Your Honors. All right. Thank you, Mr. Gibbons. You've saved time for rebuttal. Mr. Rosemond? May it please the Court, I'm Sam Rosemond, and together with Christy Malatesta, we represent One Beacon in this case. The Louisiana court that interpreted a Louisiana policy issued to a company in Louisiana and the district court in this case have held that Barnett's claims do not have coverage under the policies because the claim falls under the products hazard for which Mississippi Valley did not purchase coverage. Arthur Simmons, a long-time underwriter at One Beacon, has testified that the policies don't automatically come with products and complete operations coverage. Instead, you must purchase the coverage, you must request it and pay a premium for it. That testimony is uncontradicted in the record. What about the policy indicating it has been paid? What part has been paid, Your Honor? That the coverage has been, was paid when the premium, showing the premium was paid. Yes, I'll go through that right now, Your Honor. If you go to page, I cited, I blew up page 170, it's the same as the declarations page 93 that Mr. Gibbons gave you. It states that item 3 states, the insurance is afforded only with respect to such and so many of the following coverages as are indicated by specific premium charge. And if you go to coverage B, there's a premium charge of $127.42. Item 4 states, and this was omitted by Mr. Gibbons when he just gave his presentation, the declarations pages are completed. This isn't the whole declarations page. It goes on and it is incorporating the following schedule that is in the policy. We've got this era under C, automobile, where that 34906 appears and the counsel is claiming that was typed in the wrong place on the policy. I mean, that's why I'm asking how is this record in shape for a summary judgment ruling on the merits? It certainly is in shape for ruling that collateral estoppel doesn't bar the action by Barnett. The reason that's an error, and I believe the policy is clear as to what was paid, is if you go to the liability schedule, that appears at record 177. What page is that in the handout he's given us? Yes, I'm going to find that. Okay, page 100. You go to that page, and if you look at, this is the page for the consolidated liability schedule, and at the top it says for the comprehensive liability coverage. If you look at the bottom When you look at the columns on the left, you can see what makes up that number 127.42. $101 was paid for premises and operations coverage, and then the balance was paid for contractual liability coverage. But when you look at products and completed operations coverage, you'll see that no premium whatsoever was paid. It's blank. And in fact, in the case of the new product, coverage was purchased by the company. That is unambiguous, and proves on the face of it that they did not purchase products. This is a point where we have the endorsement was part of the summary judgment record, and the endorsement's a little illegible or something. It was, and then what happened was if you look to record page 347, the endorsement Do you really think I can read that? I'm sorry. I can pass it up to you? No. Okay. Well, I'll just cite to the record, and I can read it very quickly. All right. The endorsement at record page 347 is called an interpretive endorsement for the Is this 104 in the handout we just got? I'm sorry? Is this page 104 in the handout we just got? No. This, let me see. I don't mean to slow you down. I just want to make sure. Yes. It's the same as page 104, but without the fold it over. What happened was when that was copied, it was folded over to the bottom of it, and you're right. It's page 104, and all that does is define the word operations and gives a further explanation as to operations. That coverage does not apply in this case because Mississippi Valley, the injury does not arise from any activity that Mississippi Valley conducted. Instead, it arises out of the sale of the product. The fall squarely into the product's hazard for which they did not purchase the coverage. So then why is the 200,000 listed on the declarations page? Is that, are you submitting that's just a scripter's error or nullified? I do not know. We don't have the record. It doesn't indicate what that was. It could be that was what the underwriting department would have approved had the premium been paid, but in order to rule in favor of the plaintiff of Barnett, you have to misread the policy. Their position suggests that insurance should be afforded for any coverage for which a limit is indicated. That's not what the policy says. It says insurance is afforded only with respect to such following coverages in which a premium is indicated. Well, but Mr. Givens' answer to that is, I hear it is. It just creates an ambiguity, and ambiguities are resolved against you. That is his position, and I agree that's the law, but I don't believe it's ambiguous at all, Your Honor. It says insurance is afforded for where a premium is noted, and there is no premium noted for that coverage. So the fact that — Based on that page or based on page 100? Page 100 shows that no premium was paid for the product's coverage. This page — Why does it say — just out of curiosity, maybe I'm missing — Yeah. Why does it say nil C endorsement as opposed to just nil? I guess it was referring to this other endorsement — Right, but what's the point of the endorsement? The point of the endorsement is to explain what the definition of operations is, which just further explains what the type of coverage that wasn't purchased. Why explain coverage that's not purchased? Do you see what I'm saying? No, I see what you're saying, but this has no application to this case because this isn't an operations case. What we're dealing with is the sale of a product only. Well, I guess the question is, there are Scrivener's errors everywhere in this document. Why should we count your Scrivener's error rather than — I mean, this blank that you very effectively highlight, maybe that's a Scrivener's error because you've got a C endorsement. It's not a Scrivener's error that it's blank because if you add up the numbers, Your Honor, on the left-hand column, it equals 12742. That's a good point. And the underwriter, Arthur Simmons, has testified that he evaluated this policy, and it's uncontradicted testimony, and he has reviewed all these documents. It's affidavit, correct? It's testified by affidavit. He hasn't testified. It's by affidavit. Right. But it's an uncontradicted sworn statement in the court record. And all the evidence suggests that that's — that's what the evidence shows, is that there was no product coverage purchased for this claim. The — he made a comment, and Mississippi Valley did agree that they didn't purchase the product's coverage. And that is evidenced by the stipulation and the fact that if they had purchased product's coverage, in the Scarborough case, they wouldn't be arguing it was excluded. There would have been an endorsement in the policy, and that wouldn't have been an issue in the Scarborough case. So, obviously, Mississippi Valley — and it's important to note that the form that was used in the other case is not the correct form that we now know was the correct forms that were used. In that case, the coverage, according to what the parties believed was the form, provided coverage for products unless it was excluded. And the court held in that case that the exclusion did not — was not specific as to when the insured was silent as to making a warning. However, in this case, the company — we've established that Mississippi Valley never purchased product's coverage in the first instance. So there is no exclusion to look to, or there's nothing to take away by the exclusion, because it was never purchased in the first place. The — the counsel argued regarding the burden of proof and the other policies. The Louisiana law is clear that the burden of proving that coverage exists is on the person seeking the coverage. It is only the insurance company's burden to prove that there is no coverage. Louisiana law allows secondary evidence to be established for those other missing policies, and the underwriter's uncontradicted affidavit establishes that the forms we've provided the court are the forms that would have been used during those time periods by these companies. And each of those forms requires that a premium be paid in order to obtain product's coverage. The fact that the insurance premium is missing on those other policies, it's a plaintiff's burden to come forward to show that — that purchased — that Mississippi Valley purchased product's coverage in those other policies. They can't just automatically say they get it based on Arthur Simmons' testimony, and the language of the policies themselves demonstrates that they must come forward with evidence that Mississippi Valley purchased product's coverage for those other years. Their attempt to throw that on back of the insurance company is just not compliant with the way the law is written for product's coverage, or for establishing coverage. There was reference in their briefs to the Scarborough case, and we cite forth many reasons why in our briefs why the Scarborough case doesn't apply. That case was — did not issue a ruling based on indemnity and whether the policy provided coverage. In fact, at page 134 of that opinion, the Court says specifically the sole question on appeal is whether under their policies they owed a defense to Mississippi Valley. That's a very critical distinction because the duty to defend is much broader than the duty to indemnify, and the Court is only to look at the allegations of a petition, read them broadly, and if there's any potential possibility whatsoever there might be coverage, then a duty to defend exists. In this case where the plaintiffs are attempting to obtain coverage under the policies, the Court's to look at the facts of the case as we know them, which in this case is that Mr. Barnett was injured by a Mississippi Valley product after Mississippi Valley relinquished possession of the product. In fact, that is the exact definition of a products hazard for which Mississippi Valley did not provide coverage, and therefore there's no coverage in this case. There's some reference in the briefs that the Louisiana Court did not have all the evidence before it and did not seriously consider the issue because it was unopposed. That is not correct. Louisiana law required and obligated that State court to evaluate these same policies that are presented to you and to evaluate the law and come to its ruling. We have attached everything that you have is what the State court had as well. Those documents appear in the court record as exhibits to the motions that we have filed. So the suggestions that plaintiffs have made regarding that the court wasn't provided everything here is just incorrect. I find of interest the fact that you urge collateral estoppel in the district court and you don't urge it here. No, Your Honor, we had never urged collateral estoppel, not even in the district court. So the district court did that sui sponte? It did. We recognize that we had a Louisiana insured to whom we issued a policy in the State of Louisiana. We went to a Louisiana court to get a determination of coverage in the policy. We had no jurisdiction over Mrs. Barnett, who's a Mississippi resident. That is why we filed the declaratory judgment action in federal court and we never did argue collateral estoppel, which is why we're here, basically. So, I don't know if the court has any other questions or would like me to respond to. All right, so now we'll hear from Ms. Malatesta, is that right? No, he was just here in case you had issues pertaining to Mississippi law that apparently haven't come up. So, I do want to answer Judge Boxdale's question. In the event the court were to reverse, this is just a summary judgment granted for the defendant. There is no vehicle by which to render anything in favor of the plaintiff and we would need to go back to court for a trial. There's other coverage issues. Even if the court were to find that there was coverage here, there are many numerous other coverage issues that have been raised in the complaint and that would still have to be resolved. Would that be a non-jury proceeding? I do believe it would be non-jury. I don't think either of us have requested a jury. However, there's many issues that have not been briefed before this court, whether these policies provide coverage for punitive damages, whether when did the exposures to the silica take place, are there pro rata allocations, there's numerous, innumerable other issues that haven't been briefed and presented to the court. The only issue before the district court and before this was, was this issue dispositive of the entire case. Has discovery been completed? Discovery's been completed below, yes. Thank you, Mr. Rosemary.  Mr. Givens, you've saved time for the brothers. May it please the court. The only admission, the only sworn testimony that Mississippi Valley did not purchase products and completed operations coverage comes from Mr. Fitzgerald's affidavit and the only thing he bases that on is the joint stipulation of facts entered into in the Scarborough case. And that joint stipulation of facts makes no mention of the word purchase or bought. It says paragraph four, it is stipulated that the policies of insurance issued by the insurers to MVSC contained a product's exclusion. That's a very distinct difference because where we are in this case is one beacon has admitted it issued policies that provided coverage. Their only dispute is that product's coverage wasn't purchased. So once on a lost policy that I've proved that there's a policy with coverage, it's up to them to disprove the coverage. Can we talk about page 100 of your presentation? Yes, Your Honor. What do you make of that, the addition that your opposed counsel presented? Yes. What I make of that position, Your Honor, is it clearly says Neil C. Endorson, but And no dollars. There's no dollars over there. Now, do we know whether that's a typo or not or whether the Neil should be there or not? I don't know. But what I do As opposing counsel points out, it seems deliberate because it doesn't add up. It adds up perfectly to 127-42. It does, Your Honor. But where the disconnect is on that issue is when you look under coverage D, when there is no liability provided for in the policy, it does state Neil. So they stated Neil under aggregate products for property damage and they stated Neil for aggregate protective. But for aggregate products under coverage B, in which we're under, it clearly states $200,000. That's the limit of liability. And the policy premium is listed out next to it and you have to have that at a minimum, Your Honor, creates an ambiguity between page 100 and page 93. One says Neil and one says $200,000. And under clear case law, you have to construe that or you should construe that in favor of Mississippi Valley to affect coverage. Do you agree that if this is remanded for trial, it's a bench trial? Typically declaratory judgment actions are bench trials. And yes, yes, I agree with that. And let's, you know, on that same issue, there's only one place in this policy where a limit of liability is stated. And that's on the first page of the declarations. And as I pointed out in my three main points that always refer to the declarations, the actual contents of the policy, the conditions, the terms, the definitions of the policies, none of that appears on pages 99 and 100. It appears within the body of the policy stating the conditions. And those conditions always bring you back to this page 93. Can I go back to the arithmetic, though? So what is your theory, then? I mean, obviously you're not supposing that that blank light item is a free item. You're back to page 100? Exactly. Page 100. Yes, Your Honor. It says Neal C. Endorsement. Right. But to me, what I'm actually more interested in is the arithmetic. I'm sorry. Is the arithmetic. The arithmetic. No, I do not. It looks like nothing is being paid for this item. It does appear to be that way. And if it was nothing being paid for that item, the Neal should have been transferred to the declarations page, and it was not. Fair enough. And we don't have a policy to compare that to. But I guess what I'm wondering is what is your theory for what was paid? How much was this? Two questions. One, how much should this have been paid? And two, was that payment — was that, in fact, paid for? One, I don't know how much should have been paid. It seems to be impossible to figure out. It is impossible. You can't really reverse engineer. That would be something that would be within their knowledge. And they did submit another sample policy that I'd like to reference you to that's in the materials before you, which was Exhibit B to Mr., I believe, Simmons' affidavit. And if y'all turn to page — record page 108, you know, there's again — this is one of the policies they're relying upon for the loss policies to show what the terms would have been. And it says, item four, the declarations are completed on attached schedules designated GU-9024A. That's the same form that we've been talking about on page 100 of the record. But if you flip back through the rest of this policy that they submitted as complete to this court, that form does not appear. And what that form would have done is it would have instructed us and it would have instructed this court on what it looks like when somebody pays the premiums for products coverage. But they didn't put that form in the record, so I don't know what that form looks like when somebody pays the coverage, because there is no evidence and there is no testimony to that effect. And Mr. Simmons, in his affidavit, briefly, has no — makes no comments, no admissible testimony as to what the terms and conditions of the nine loss policies were. He cannot state what they are. Their whole argument rests on the fact of Mr. Fitzgerald's interpretation, legal conclusion, that Mississippi Valley agreed it did not purchase products coverage, and that simply is not what Mississippi Valley agreed to. Do you agree that all of the discovery has been completed? Yes, Your Honor. For a bench trial, what witnesses would you call? I would cross-examine their witnesses. I would — yes, Your Honor. Anything further? Thank you, Your Honor. Your case and all of today's cases are under submission, and the court is in recess.